Andrew B. Ryan
Texas Bar No. 24054464
**RYAN LAW PARTNERS LLP**
3811 Turtle Creek Blvd., Suite 1450
Dallas, Texas 75219
T: (214) 347-7377
F: (888) 594-6240
E: andy@ryanlawpartners.com

Sean J. McCaffity
Texas Bar No. 24013122
**SOMMERMAN, MCCAFFITY QUESADA & GEISLER, LLP**
3811 Turtle Creek Blvd., Suite 1400
Dallas, Texas 75219
T: (214) 720-0720
F: (214) 720-0184
E: smccaffity@textrial.com

*Counsel for Plaintiffs*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 (Subchapter V) |
| | § | |
| PM Management-Killeen I NC LLC, *et al*, | § | Case No. 25-03049 (sgj) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |
| | § | |
| Abri Care Group, LLC; Sheryl Frankl, Individually and Derivatively on Behalf of Affinity Care Group, LLC; Abraham Frankl; MR Acquisition, LLC; and Abri Health Services, LLC; | § § § § § § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adv. Proc. No. 26-03007-sgj |
| | § | |
| | § | |
| | § | |
| Gutnicki, LLP; Aharon S. Kaye; and Elizbeth Nicolle ("Liz") Boydston, | § § | |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |

**PLAINTIFFS' CONSOLIDATED RESPONSE TO
DEFENDANTS' MOTIONS TO DISMISS**

TABLE OF CONTENTS

Page

Table of Contents .................................................................................................. i

Table of Authorities .............................................................................................. ii

I.      Introduction.................................................................................................1

II.     Standards of Review ...................................................................................3

        A.      Motions for Dismissal Under 12(b)(6). .........................................3

        B.      Motions for Dismissal Under 12(b)(1). .........................................4

III.    Arguments and Authorities.........................................................................5

        A.      Attorney-Immunity Does Not Apply Because All Plaintiffs Are
                Clients of Defendants.....................................................................5

                1.      The Frankl Agreement Expanded the Scope of Gutnicki's
                        Representation to All Plaintiffs. .........................................5

                2.      Defendants' Claimed Non-Representation of the Plaintiffs
                        Lacks Merit.........................................................................7

        B.      The Attorney-Immunity Doctrine Does Note Bar the Tortious
                Interference Claims.......................................................................10

        C.      Plaintiffs' Claims Are Not Barred by the Anti-Fracturing Doctrine. ........12

        D.      At Most, Repleading is Required....................................................13

        E.      The Court Has Related-To Jurisdiction Over the Plaintiffs' Claims. ........14

                1.      Defendants are Bound by the Protected Party Injunction ...............14

                2.      The case is related to the underlying bankruptcy proceedings
                        because it could affect the underlying estate...................15

IV.     Conclusion ................................................................................................16

CERTIFICATE OF SERVICE .............................................................................16

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
          556 U.S. 662 (2009)........................................................................................................4

*Barcelo v. Elliott*,
          923 S.W.2d 575 (Tex.1996)...........................................................................................5

*Bell Atl. Corp. v. Twombly*,
          550 U.S. 544 (2007)........................................................................................................4

*Clarke v. Ruffino*,
          819 S.W.2d 947 (Tex. App.—Houston [14th Dist.] 1991, writ dism'd w.o.j., (Mar. 4, 1992)
          *and reh'g of writ of error overruled* (Apr. 8, 1992).   ........................................................7

*Eby Constr. Co., Inc. v. Dallas Area Rapid Transit.*,
          369 F.3d 464 (5th Cir.2004) ......................................................................................4, 9

*Graham Development Co. v. Travis County*,
          No. 1:25-CV-1196-RP, 2026 WL 747034 (W.D. Tex. Mar. 17, 2026)) ...........................4

*Grant Me The Wisdom Foundation, Inc. v. Boyar*,
          716 S.W.3d 916, 934 (Tex. App.—Houston [14th Dist.] 2025, pet. denied) ....................10

*Harrington v. State Farm Fire & Cas. Co.*,
          563 F.3d 141 (5th Cir. 2009) ........................................................................................1

*In re EPIC Holdings, Inc.*,
          985 S.W.2d 41 (Tex. 1998)...........................................................................................10

*In re Spillman Dev. Group, Ltd.*,
          710 F.3d 299, 304 (5th Cir. 2013) ..................................................................................3

*Johnson v. Deutsche Bank Nat. Tr. Co.*,
          2013 WL 3810715 (N.D.Tex. July 23, 2013)..................................................................1

*Jones v. Greninger*,
          188 F.3d 322 (5th Cir.1999)  ........................................................................................4

*Kelly v. Nichamoff*,
          868 F.3d 371 (5th Cir. 2017) .......................................................................................11

*Kokkonen v. Guardin Life Ins. Co. of Am.*,
    511 U.S. 375 (1994) ..................................................................................................4

*Latham v. Castillo*,
    972 S.W.2d 66 (Tex. 1998)......................................................................................12

*Matter of Zale Corp.*,
    62 F.3d 746 (5th Cir. 1995) ....................................................................................15

*McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*,
    991 S.W.2d 787 (Tex. 1999).................................................................................5, 11

*Pitts v. Rivas*,
    709 S.W.3d 517 (Tex. 2025)..................................................................................2, 12

*Reagan Nat'l Advert. of Austin, Inc. v. Hazen*,
    No. 03-05-00699-CV, 2008 WL 2938823
    (Tex. App.—Austin July 29, 2008, no pet.)............................................................11

*Sheller v. Corral Tran Singh, LLP*
    551 S.W.3d 357 (Tex. App.—Houston [14th Dist.] 2018, pet denied) ..............................2

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998).....................................................................................................5

*Stephens v. Three Finger Black Shale P'ship*,
    580 S.W.3d 687 (Tex. App.—Eastland 2019, pet. denied) ................................................10

*Sotelo v. Stewart.*,
    281 S.W.3d 76 (Tex. App.—El Paso 2008, pet. denied) ......................................................7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)................................................................................................4, 9

*Turner v. Pleasant*,
    663 F.3d 770 (5th Cir. 2001) ....................................................................................4

*Wood v. Wood (In re Wood)*,
    825 F.2d 90 (5th Cir.1987) ......................................................................................15

*Yaklin v. Glusing, Sharpe & Krueger*,
    875 S.W.2d 380 (Tex. App.—Corpus Christi—Edinburg 1994, no writ)........................8

*Youngkin v. Hines*,
    546 S.W.3d 675 (Tex. 2018)..................................................................................11, 12

iii

**Statutes**

28 U.S.C. § 1334(b)..................................................................................................................15

FED. R. BANKR. P. § 7012(b) ....................................................................................................3, 4

FED. R. CIV. P. 12(b)(1) .............................................................................................................4, 14

FED. R. CIV. P. 12(b)(6) ...............................................................................................................17

Plaintiffs Sheryl Frankl (individually and derivatively on behalf of Affinity Care Group LLC), Abri Care Group LLC, Abraham Frankl ("Mr. Frankl"), MR Acquisition LLC, and Abri Health Services LLC ("Abri") file this Consolidated Response to Defendants' Motions to Dismiss (ECF Nos. 7-8 & 10-11).[1]

## I.      INTRODUCTION

1.      Plaintiffs' Complaint (ECF No. 1) sets forth in vivid detail the unethical and tortious conduct of the Gutnicki law firm and two of its partners, defendants Aaron Khaye and Liz Boydston.  By date and time, and with references to contemporaneous emails, text messages, and recorded telephone calls, Plaintiffs set forth that Gutnicki advised and represented everyone—all the Plaintiffs and the Debtors—in connection with numerous issues related to a bankruptcy proceeding the firm knew was not properly authorized.  At the motion to dismiss stage, these facts must be accepted as true.  And Defendants don't (and can't) dispute that these facts satisfy each element of the Plaintiffs' many tort claims.  Under these circumstances, a motion to dismiss "is viewed with disfavor and is rarely granted." *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009) (internal citation & quotation omitted).

2.      Even so, Defendants seek a merits dismissal, with prejudice, not on any deficiency in Plaintiffs' Complaint, but on two affirmative defenses.  "[A]ffirmative defenses are generally not appropriate grounds on which to dismiss a claim under a Rule 12(b)(6) motion" unless "the facts pleaded" definitively establish the defense. *Johnson v. Deutsche Bank Nat. Tr. Co.*, No. 3:12-CV-3542-L, 2013 WL 3810715, at *8 (N.D. Tex. July 23, 2013) (internal citation & quotation omitted).  Put another way, a plaintiff loses a Rule 12(b)(6) motion on an affirmative defense only

---

[1]      Defendants raise essentially the same arguments in support of their motions to dismiss.  Plaintiffs have therefore filed a consolidated response addressing the legal issues in one brief for the Court's convenience.

when he pleads himself out of court.  Here, Plaintiffs have done the opposite—they have expressly alleged facts that defeat the supposed affirmative defenses.

3.      *First*, Defendants ask for dismissal under the attorney immunity doctrine, which is "an affirmative defense that protects attorneys from liability to **nonclients**." *Sheller v. Corral Tran Singh, LLP*, 551 S.W.3d 357, 362–63 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) (emphasis supplied).  This defense therefore fails because the Complaint alleges that Defendants represented all Plaintiffs through an engagement agreement with Mr. Frankl ("Frankl Agreement") that expressly states it will extend to "individuals or entities that are affiliated with or related to" him.  Compl. ¶ 20.  Defendants followed through on that promise by providing (and billing Mr. Frankl for) services and advice for his related entities.  These related individuals and entities included his wife, Sheryl Frankl, and the entities she partially owned and which he helped manage, including MR Acquisition, Abri Care Group, Affinity Care Group, and Abri.  Because Plaintiffs were Defendants' clients, the attorney immunity doctrine does not apply.

4.      *Second*, Defendants seek dismissal under the anti-fracturing rule, which is also a defense that "resemble[s] application of…familiar summary-judgment standards" because it asks "if a plaintiff raises a genuine fact issue on the elements of additional claims." *Pitts v. Rivas*, 709 S.W.3d 517, 525–26 (Tex. 2025).  It should go without saying that such a summary judgment analysis is prohibited on a Rule 12(b)(6) motion.  In any event, the Complaint details many facts that support distinct claims against Defendants for wrongs that cannot be characterized as mere professional negligence.  Defendants brazenly misrepresented facts—including who they represented—to the Court.  They continued to pursue a bankruptcy even after they knew it wasn't properly authorized.  And they took all these actions for their express financial benefit, not for the good of their clients.

2

5.      Finally, Defendants urge this Court to reject jurisdiction over Plaintiffs' claims. Defendants ignore, of course, that they were the ones who included Gutnicki in the plan's Protected Party Injunction.  That injunction not only mandated Plaintiffs to file their lawsuit in the Bankruptcy Court but also gives the Court continued jurisdiction over Defendants' wrongdoing— almost all of which concerns a bankruptcy proceeding before this very court.  Indeed, Plaintiffs' complaint satisfies the relatively lenient standard for "related to" jurisdiction: that the litigation "could conceivably have any effect on the estate being administered in bankruptcy." *In re Spillman Dev. Group, Ltd.*, 710 F.3d 299, 304 (5th Cir. 2013) (internal quotation & citation omitted). The Complaint alleges that Gutnicki received $665,000 from the bankruptcy estate by making false representations to the Court.  Compl. ¶¶ 129-133.  When these facts are proven, this Court could (and should) order Gutnicki to repay all its fees to the liquidating trust.  And even such "attenuated, hypothetical effects of third-party litigation can give rise to related-to bankruptcy jurisdiction." *In re Spillman*, 710 F.3d at 304.

6.      But even if the Court disagrees with Plaintiffs' merits and jurisdictional arguments, any dismissal should be without prejudice.  For Defendants' Rule 12(b)(6) arguments, Plaintiffs should be given leave to replead, especially to address any alleged defects or lack of clarity in their allegations.  For Defendants' Rule 12(b)(1) argument, that dismissal must be without prejudice. And it should expressly preserve Plaintiffs' rights to timely sue Defendants in the appropriate state or federal court.

## II.      STANDARDS OF REVIEW

### A.      Motions to Dismiss Under Rule 12(b)(6).

7.      Legal standards traditionally applicable to a motion to dismiss for failure to state a claim apply in bankruptcy proceedings.  FED. R. BANKR. 7012(b); FED. R. CIV. P. 12(b)(6).

3

A complaint will survive a motion for dismissal under 12(b)(6) if it contains "enough facts to state a claim to relief that is plausible on its face." FED. R. CIV. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)). The question is not whether the plaintiff will ultimately prevail, but whether the complaint itself contains enough facts that plaintiff's right to relief is greater than mere speculation. *Ashcroft*, 556 U.S. at 678; *Bell Atl. Corp.*, 550 U.S. at 570. When evaluating a motion to dismiss under 12(b)(6), the court must "accept 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Eby Constr. Co., Inc., v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir.2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir.1999)); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

8.      Taking all facts as true and in the light most favorable to plaintiff, "the court should not dismiss [a] claim unless the plaintiff would not be entitled to relief under **any** set of facts or **any possible** theory that [it] could prove consistent with the allegations of the complaint." *Eby Construction*, 369 F.3d at 467 (citing *Jones*, 188 F.3d at 324) (emphasis supplied). A motion to dismiss under 12(b)(6) "is viewed with disfavor and is rarely granted." *Graham Development Co., v. Travis County*, No. 1:25-CV-1196-RP, 2026 WL 747034, at *5 (W.D. Tex. Mar. 17, 2026) (citing *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011)).

## B.      Motions to Dismiss Under Rule 12(b)(1).

9.      Rule 12(b)(1) requires a court to have subject-matter jurisdiction to hear a dispute. FED. R. CIV. P. 12(b)(1). Federal courts may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Graham*, 2026 WL 747034, at *4. "Dismissal for lack of subject-matter jurisdiction because of the inadequacy of a federal claim is proper only when the claim is so

4

insubstantial, implausible, foreclosed by prior decision of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998).

### III.   ARGUMENTS & AUTHORITIES

**A.   Attorney-immunity does not apply because all Plaintiffs are clients of Defendants.**

10.   The basic principle of the attorney-immunity doctrine is that attorneys do not owe a professional duty of care to non-clients who claim they are damaged by the attorney's representation of their client. *See Barcelo v. Elliott*, 923 S.W.2d 575, 577 (Tex.1996); *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 792 (Tex.1999). Attorney-immunity is not a proper defense to Plaintiffs' claims, however, because all Plaintiffs were clients of all Defendants.

**1.   The Frankl Agreement extended the scope of Gutnicki's representation to all Plaintiffs.**

11.   All Plaintiffs are clients to Gutnicki and its attorneys under the Frankl Agreement. Gutnicki had two direct engagement agreements with parties here: the Frankl Agreement and the January 2023 Engagement Agreement with Abri Health Services ("Abri Agreement"). Compl. ¶¶ 19, 32. Although the Abri Agreement was limited to services surrounding potential litigation within a defined matter, the Frankl Agreement was much broader. *Id.* ¶ 32; ¶¶ 19–20. Relevant here, the Frankl Agreement retained Gutnicki to represent Mr. Frankl in transactions concerning the acquisition and management of skilled nursing facilities. *Id.* ¶ 19. The Frankl Agreement included a paragraph under "Scope of Representation" which allowed for the clients to "limit *or expand* the scope of [Gutnicki's] representation from time to time (including expansion of this engagement to include ***additional individuals or entities that are affiliated with or related***

5

***to [Mr. Frankl])."*** *Id.* ¶ 20 (emphasis supplied).  This expansion provision automatically extended the Frankl Agreement's terms to all entities "affiliated with or related to" Mr. Frankl, including Plaintiffs Abri, Abri Care Group LLC, Sheryl Frankl (individually and derivatively on behalf of Affinity Care Group LLC), and MR Acquisition LLC.

12.     Mr. Frankl and Gutnicki intended for the Frankl Agreement to encompass all Plaintiffs here through the expanded scope provision.  At the time the Frankl Agreement was signed, Gutnicki was aware of Mr. Frankl's endeavors in the skilled nursing home industry and knew that he had various entities related to him in the industry's PropCo/OpCo structure.  It is precisely for this reason that Gutnicki drafted the Frankl Agreement to include such a wide scope of representation.  As a firm with experience in such agreements, Gutnicki could have and would have chosen a more restrictive scope, like in Gutnicki's Engagement Agreement with Abri, if the firm intended for their services to be more limited.  *Id.* ¶ 32.  Because it did not, the Frankl Agreement established an ongoing attorney-client relationship with all Plaintiffs and Gutnicki indefinitely, absent notice of termination.  *Id.* ¶ 21.

13.     Gutnicki and its attorneys represented all plaintiffs consistent with the expanded agreement since 2022.  *Id.* ¶ 22.  Gutnicki represented Abri Health Services through Mr. Frankl in its management of Finch Facilities and various other matters.  *Id.* ¶ 32.  Gutnicki also represented Abri in the underlying bankruptcy, regularly advising Abri through its board and Mr. Frankl on management of assets, whether to file a proof of claim against Debtors, whether to obtain separate counsel, and more generally how to not "get fucked."  *Id.* ¶¶ 44–46, 66, & 73–81.  For these same reasons, Gutnicki also represented both Affinity Care Group LLC, Abri Care Group LLC and Sheryl Frankl, because the firm knew these entities and individuals were the Debtors' beneficial owners.  *Id.* at ¶¶ 69-71, 86-88, & 112-118. Gutnicki represented MR Acquisition through

Mr. Frankl with advice and ongoing negotiation related to the Finch LOI, drafting of closing documents, and whether to sue Finch Facilities for specific performance. *Id.* at ¶¶ 25–30 & 121. None of these instances of representation required a separate engagement agreement because each of these individuals and entities was covered by the Frankl Agreement. *Id.* at ¶¶ 25, 32, & 91.

14.     Gutnicki also billed consistent with the expanded agreement.  As Plaintiffs allege, Gutnicki swore it had written off all invoices related to MR Acquisition's LOI with the Finch Facilities, but three weeks after the bankruptcy ended, demanded Mr. Frankl pay its bills.  Those bills "had increased" during the bankruptcy for work "related to the bankruptcy proceedings and MR Acquisitions' request that Gutnicki file suit to enforce the Finch LOI."  Compl. ¶¶ 125-26.

15.     For all these reasons, the Complaint alleges an attorney-client relationship between all Plaintiffs and the Defendants.  The attorney-immunity doctrine defense therefore fails.

### 2.   Defendants' Claimed Non-Representation of the Plaintiffs Lacks Merit.

16.     In pursuit of their attorney-immunity claim, Defendants Gutnicki and Kaye seek to distance themselves from Plaintiffs Abri, Abri Care Group, Affinity Care Group, and Sheryl Frankyl.   Their arguments fail for one simple reason: Defendants cannot overcome the presumption that an attorney-client relationship exists between the parties.

17.     A presumption that an attorney-client relationship exists between the parties.  An attorney-client relationship arises when an attorney provides advice or legal services to a client. *See Sotelo v. Stewart*, 281 S.W.3d 76 (Tex. App.—El Paso 2008, pet. denied) (attorney-client relationship can be implied from the attorney's gratuitous rendition of professional services); *Clarke v. Ruffino*, 819 S.W.2d 947 (Tex. App.—Houston [14th Dist.] 1991), *writ dismissed w.o.j.*, (Mar. 4, 1992) *and reh'g of writ of error overruled* (Apr. 8, 1992).  In disputes where a fact issue of whether an attorney-client relationship exists, though, the burden for which party must prove

7

the relationship shifts at different stages of litigation. *Yaklin v. Glusing, Sharpe & Krueger*, 875 S.W.2d 380 (Tex. App.—Corpus Christi—Edinburg 1994, no writ). While the burden at trial is on the plaintiff to prove the relationship exists, at the fact-finding stage of litigation, there is a presumption that the relationship exists and the burden of proving its non-existence shifts to the defendant. *Id.* Here, Plaintiffs have asserted an attorney-client relationship between all Plaintiffs and all Defendants. Those allegations are sufficient to establish a presumption of an attorney-client relationship—a presumption Defendants can only overcome with evidence, which cannot be considered on a Rule 12(b)(6) motion.

18. Gutnicki's and Kaye's argument that an attorney-client relationship does not exist turns on whether Mr. Frankl asked for advice related to Plaintiffs who Defendants claim are non-clients. He did. From 2022 through 2024, Mr. Frankl repeatedly consulted with Kaye on matters for *all* Plaintiff entities. *See* Compl. ¶ 22. Kaye was Mr. Frankl's direct point of contact at Gutnicki. *Id.* at ¶¶ 43, 45, 53, 54, 100–07, & 112. In exchange, Kaye and Gutnicki provided advice and multiple assurances that Mr. Frankl was his and Gutnicki's client and his entities were *only* Gutnicki clients **because of** Mr. Frankl. *Id.* ¶ 105. Taking these facts as true under the Rule 12(b)(6) standard, Defendants Gutnicki and Kaye cannot deny their attorney-client relationship with Plaintiffs Abri Care Group, Affinity Care Group, Sheryl Frankl, and MR Acquisition.

19. Astonishingly, Boydston attempts to improperly recast herself as someone with **no connection** to any Plaintiffs. Even her relationship with Abri, she argues, is only limited to the work she did with Abri while at Polsinelli LLP. Not only are these claims inaccurate, but they improperly attempt to recast the facts pled by Plaintiffs in a way that is more favorable to her affirmative defense. But at this stage of litigation, the court must only consider the well-pleaded facts of the complaint, and those facts **must** be taken as true by the court. *Eby Const. Co.*, 369

8

F.3d at 324; *Tellabs*, 551 U.S.  ("the court must assume that all plausible facts contained in the complaint are true").  Then, the only decision the Court must make is if those facts, when viewed most favorably for Plaintiffs, support their claims.  *See Tellabs*, 551 U.S. at 322; *Twombly,* 550 US at 555–56.  The court cannot and should not decide disputed fact issues, which is what Boydston seeks in her motion.

20.     These alleged facts must be taken as true.  Boydston was a Gutnicki partner while the Frankl Agreement was in place.  Compl. ¶ 37.  As a partner at Gutnicki, Boydston worked on various matters for various entities under the Frankl Agreement.  Her employer, Gutnicki, told Mr. Frankl that: "She [Ms. Boydston] knows you're the client."  *Id.* ¶ 107.  She spoke to him directly about all the issues arising from the imposition of a receiver over the Killeen Facilities. *Id*. at ¶¶ 46–50.  She "advised" Mr. Frankl and MR Acquisition to delay suing the Finch Facilities' landlord "until after the expected confirmation of the bankruptcy plan."  *Id.* ¶ 121.  She provided direct representation to Abri—holding regular meetings and calls with Abri's board and purporting to advise them about what was in Abri's best interests, to avoid getting "fucked."  This included advising against Abri filing a proof of claim in the bankruptcy or obtaining separately counsel.  *Id.* at ¶¶ 4-5, 46, 63, 66, 73-81, 83, 95, & 132.  And it included Ms. Boydston voluntarily asserting representation of the Killeen Facilities' owners (the Affinity Care Group and Abri Care Group plaintiffs and Sheryl Frankl) by "sign[ing] a declaration under penalty of perjury" that those owners had hired Gutnicki to represent the Debtors.  *Id*. at ¶¶ 83, 89.

21.     In Texas, "[f]or an attorney-client relationship to exist, the parties must explicitly or by their conduct manifest an intention to create it.  To determine whether there was a meeting of the minds, we use an objective standard examining what the parties said and did and do not look at their subjective states of mind."  *Grant Me The Wisdom Foundation, Inc. v. Boyar*, 716 S.W.3d

9

916, 934 (Tex. App.—Houston [14th Dist.] 2025, pet. denied) (*citing Stephens v. Three Finger Black Shale P'ship*, 580 S.W.3d 687, 721 (Tex. App.—Eastland 2019, pet. denied)). Here, the Complaint sets forth Boydston's clear objective pattern of conduct that shows a manifest intention to act as an attorney for the Plaintiffs, despite her conflicting statement when confronted about the representation by Mr. Frankl. Like all attorneys at her firm (including Kaye), Boydston was a Gutnicki attorney who represented all Plaintiffs.[2]

22.    Defendants have failed to overcome the presumption that an attorney-client relationship exists between the parties. The facts are more than sufficient to support Plaintiffs' claims and establish an attorney-client relationship between all Plaintiffs and all Defendants. Defendants are therefore unable to hide behind the shield of attorney-immunity.

**B.     The Attorney-Immunity Doctrine Does Not Bar the Tortious Interference Claims.**

23.    Even if this Court finds insufficient facts to establish an attorney-client relationship between Defendants and some Plaintiffs, Defendants' affirmative defense of attorney-immunity still extends beyond the intended scope of the doctrine. The attorney-immunity doctrine does not shield attorneys from liability for filings on behalf of non-clients.

24.    The attorney-immunity doctrine is "not limitless." *Youngkin v. Hines*, 546 S.W.3d 675, 682 (Tex. 2018); *McCamish*, 991 S.W.2d at 793 (Tex. 1999) ("While these policy reasons for the privity rule are legitimate, they do not preclude a [] cause of action against an attorney by a

---

[2]    In addition, Boydston cannot dispute the existence of the attorney-client relationship between Gutnicki and the Plaintiffs because she was a partner in Gutnicki at the time of the alleged misconduct. The existence of the attorney-client relationship between Gutnicki and the Plaintiffs includes her role as a partner of the firm working on related matters for the Plaintiffs, irrespective of whether Boydston believed she had an attorney-client relationship. *See In re EPIC Holdings, Inc.*, 985 S.W.2d 41, 49 (Tex. 1998) ("To allow one member of a law firm to dispute the existence of an attorney-client relationship acknowledged by another member of the same firm would put a client at a serious disadvantage in dealing with the firm. Members of a law firm cannot disavow access to confidential information of any one attorney's client.").

10

nonclient."). Its purpose is to shield attorneys from liability in instances where they are doing their job on behalf of clients. *McCamish*, 991 S.W.2d. at 792. But the doctrine does not shield attorneys from all wrongdoing for "the mere fact that [the] attorney was representing a client" at the time of wrongdoing. *Kelly v. Nichamoff*, 868 F.3d 371 (5th Cir. 2017). Nor does the doctrine shield the attorney from liability if they committed such wrongdoing on behalf of a client. *Youngkin*, 546 S.W.3d at 682. For an attorney to properly raise attorney-immunity, their conduct must fall within the bounds of their representation of a particular client and "require[] the office, professional training, skill, and *authority* of an attorney." *Kelly*, 868 F.3d at 374 (quoting *Reagan Nat'l Advert. of Austin, Inc. v. Hazen*, No. 03-05-00699-CV, 2008 WL 2938823, at \*3 (Tex. App.—Austin July 29, 2008, no pet.)) (emphasis added).

25.    The attorney-immunity doctrine does not shield Defendants from liability for making unauthorized filings on behalf of Sheryl Frankl, Abri Care Group, and Affinity Care Group as purported non-clients. Defendants filed a bankruptcy petition and appeared in court on behalf of debtors **without the consent** of Debtors' owners. Compl. ¶ 153. The Abri Board was a separate entity with no control over debtors and could not authorize the filing. Gutnicki, Boydston and Kaye knew this at the time of their initial filing but still proceeded anyway. *Id.* ¶ 87–88. Such a situation falls entirely outside the scope of any representation of any of parties Defendant purports were its clients.

26.    Defendants ask the court to twist attorney-immunity into an absolute shield against all claims from non-clients but offer no support for this reading. They offer no cases supporting this interpretation—probably because none exist—and no explanation for their unauthorized filing. Attorney-immunity is "not limitless"—and for good reason. *Youngkin*, 546 S.W.3d at 682. Defendants' interpretation would allow any attorney to file a bankruptcy on behalf

11

of any non-client ***without that person's consent*** but be shielded by attorney-immunity. The implications of such an interpretation would be disastrous. Defendants cannot be allowed to hide from Plaintiffs' claims behind the attorney-immunity doctrine.

**C.        Plaintiffs' Claims Are Not Barred by the Anti-Fracturing Doctrine.**

27.        The anti-fracturing doctrine "does not categorically bar" a client from pursuing multiple causes of action against a professional. *Pitts*, 709 S.W.3d at 525. The purpose of the doctrine is to prevent plaintiffs from breaking up a claim for legal malpractice (or any professional negligence) into multiple claims to obtain litigation benefits. *Id.* But where a plaintiff pleads additional facts that support their distinct claims, those other claims will stand. *Latham v. Castillo*, 972 S.W.2d 66, 69 (Tex. 1998); *Pitts*, 709 S.W.3d at 525. Anti-fracturing, therefore, should not "blur the distinction" between claims, but take extra care to ensure those other claims are supported by the facts. *Pitts*, 709 S.W.3d at 525; *Latham*, 972 S.W.2d at 69.

28.        Here, Plaintiffs' additional claims are more than supported by the facts detailed in the Complaint. Plaintiffs do not simply claim that Defendants represented them poorly. *See Pitts*, 709 S.W.3d at 524 (discussing how negligence claims deal with the quality of services provided, not actual misconduct). Plaintiffs claim Defendants breached their fiduciary duties of candor by making "materially" and "demonstrably false" representations to the Court. Compl. ¶¶ 89, 130. Defendants breached their fiduciary duty of loyalty by representing other clients with interests adverse to those of their existing clients. *Id.* at ¶¶ 76, 89–95 (describing Gutnicki's various omissions to the bankruptcy court with respect to conflicts). Defendants committed gross negligence by intentionally pursuing a bankruptcy proceeding on behalf of debtors that they ***knew*** they could not pursue. *Id.* ¶ 88. Defendants intentionally misrepresented and provided false information to the Abri Board and Mr. Frankl—information that these parties justifiably relied

upon to make decisions. *Id.* at ¶¶ 51, 74–80, 109, 121. And Defendants willfully and intentionally interfered with Sheryl Frankl, Abri Care Group, and Affinity Care Group's ownership contracts with the Debtors by filing an unauthorized bankruptcy that wiped out their business value. *Id.* at ¶¶ 75, 83–88. Plaintiffs have more than sufficiently pled facts to show a distinction between these other claims and their claim that Defendants provided poor quality legal services.

### D.      At Most, Repleading is Required.

29.      Plaintiffs' Original Complaint was unusually fact intensive. Plaintiffs provided pages of detail to support their claims and surely rose to the plausibility standard required under 12(b)(6). For example, Plaintiffs have properly alleged negligent misrepresentation claims with requisite detail and plausibility. *See* Compl. at ¶¶ 159-164 (setting out legal elements of the claim and referring to factual support allegations); ¶¶ 63-72 (detailing the false statements to the Board and the justifiable reliance and consequences); ¶¶ 74-81 (detailing Boydston's false statements and omissions to Plaintiffs as advice). Similarly, Plaintiffs have properly alleged tortious interference claims in detail. *See* Compl. at ¶¶ 168-170 (setting out legal elements of claim and referring to factual support allegations); ¶¶ 66-71 (detailing cajoling into unauthorized bankruptcy filings that constitute tortious interference).

30.      Because the Complaint is so fact-intensive, it is unrealistic to assume that Plaintiffs' claims are implausible. Thus, if Defendants' Rule 12(b)(6) motions are granted, the proper remedy is repleading, not dismissal.

### E.      The Court Has Related-To Jurisdiction Over Plaintiffs' Claims.

31.      Plaintiffs' claims should not be dismissed under Fed. R. Civ. P. 12(b)(1) because the court has subject matter jurisdiction subject to either the underlying Protected Party Injunction or the case's potential effect on the underlying estate.

13

**1. Defendants are Bound by the Protected Party Injunction.**

32.     The Protected Party Injunction of the Confirmation Order in the underlying bankruptcy provided this Court with "exclusive jurisdiction over any suit brought . . . against a Protected Party in connection with or arising out of . . . the Cases." Pls.' Compl. ¶ 17.  It also provides that this Court will direct the appropriate parties to the appropriate court, where necessary, but only after that party has first filed in the Court.  Gutnicki and its attorneys, as counsel for debtors in the underlying suit, are Protected Parties and subject to the Protected Party Injunction.  Because of Defendants' protected party status, Plaintiffs properly filed in this Court.

33.     Defendants Kaye and Gutnicki fail to even address the presence of the Protected Party Injunction, while Boydston claims she should not be subject to it based on her departure from Gutnicki in December 2025.  This is another ridiculous attempt of Boydston to deny accountability for her own actions.  If this Court determines it does have jurisdiction over Plaintiffs' claims, Boydston cannot avoid liability as an individual attorney for her own actions committed while working as a partner at Gutnicki.  Plaintiffs' claims directly center Boydston's actions as an attorney at Gutnicki.  The fact that she no longer works at Gutnicki does not shield her from those actions.  Boydston, therefore, still constitutes a protected party under the Protected Party Injunction.

**2. The case is related to the underlying bankruptcy proceedings because it could affect the underlying estate.**

34.     Section 1334(b) provides that district courts should have original jurisdiction of all civil proceedings "arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b).  In determining whether a matter is "related to" a bankruptcy, some nexus must exist between the related civil proceeding and the bankruptcy case. *Matter of Zale Corp.*, 62 F.3d 746, 752 (5th Cir. 1995).  That nexus is clear when "the outcome of that proceeding could conceivably

14

have any effect on the estate being administered in bankruptcy." *Wood v. Wood* (*In re Wood*), 825 F.2d 90, 93 (5th Cir.1987). Additionally, a determination of "related to" jurisdiction should promote judicial economy and efficiency. *Matter of Zale Corp.*, 62 F.3d 746 at 752.

35. This Court has subject-matter jurisdiction because Plaintiffs' claims are related to the underlying bankruptcy cases. In November 2024, Gutnicki was awarded $665,000 in fees and expenses from the underlying bankruptcy. Compl. ¶ 129. But this Court reduced those fees by $200,000 based on the firm's actions. *Id.* The order both questioned the purpose of the debtors' bankruptcy and the failure of Abri to file a claim in the case. *Id.* The Court's concerns expressed in the November order only scratch the surface of Defendants' improper conduct. Plaintiffs' additional claims, if proven, could potentially reduce fees awarded to Gutnicki in the matter which would affect the underlying estate. Therefore, Plaintiffs' claims are sufficiently related to the bankruptcy providing this Court with adequate jurisdiction over this case's subject-matter.

## IV. CONCLUSION

36. For the reasons stated above, Plaintiffs pray this Court deny all Defendants' motions to dismiss. Alternatively, the Court should either order repleading or dismissal with sufficient time to refile the case in the proper court.

This 17th day of April 2026.

Respectfully submitted,

/s/ *Andrew B. Ryan*
Andrew B. Ryan
Texas Bar No. 24054464
**RYAN LAW PARTNERS LLP**
3811 Turtle Creek Blvd., Suite 1450
Dallas, Texas 75219
T: (214) 347-7377
F: (888) 594-6240
E: andy@ryanlawpartners.com

/s/ *Sean J. McCaffity*
Sean J. McCaffity
Texas Bar No. 24013122
**SOMMERMAN, MCCAFFITY QUESADA & GEISLER, LLP**
3811 Turtle Creek Blvd., Suite 1400
Dallas, Texas 75219
T: (214) 720-0720
F: (214) 720-0184
E: sean@textrial.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on April 17, 2026, a true and correct copy of this document was served on counsel for all parties in accordance with the Federal Rules of Civil Procedure and/or Federal Rules of Bankruptcy Procedure.

/s/ *Andrew B. Ryan*
Andrew B. Ryan

16